# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1936

_____

Carlos Juarez Chilel

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: December 10, 2014
Filed: March 10, 2015

_____

Before BYE, SMITH, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Carlos Juarez Chilel, a native and citizen of Guatemala, petitioned for asylum under 8 U.S.C. § 1158(a)(1), withholding of removal under 8 U.S.C. § 1231(b)(3)(A), and relief under the Convention Against Torture (CAT) pursuant to 8 C.F.R. § 1208.16(c). The Immigration Judge (IJ) denied his asylum petition as untimely and denied his requests for withholding of removal and for CAT relief on

the merits. The Board of Immigration Appeals (BIA) affirmed the IJ's decision. Juarez Chilel seeks review. We deny his petition.

## I. Background

Juarez Chilel was born on April 23, 1986, in San Antonio, Guatemala. In 2008, he was living in Guatemala City, Guatemala, during which time he was threatened by a local gang and stabbed in the arm when he refused to join the gang. He informed the police about the incident, but he did not seek medical treatment for his injured arm. Juarez Chilel left Guatemala City two or three days after the incident and returned to his hometown of San Antonio. He stayed in San Antonio for several months before entering the United States in September 2009.

On May 4, 2010, Juarez Chilel was taken into the custody of the Immigration and Customs Enforcement agency after being arrested and charged with providing false information and having forged identification. He appeared before the IJ on November 8, 2010, where he conceded he was subject to removal. He thereafter filed an application for asylum, withholding of removal, and protection under the CAT. After he submitted a written application for relief, a second hearing was held before the IJ on July 19, 2012.

At this second hearing, Juarez Chilel testified about his altercation with the gang in Guatemala City. He conceded he did not know the result of the police investigation because he had not followed up with law enforcement and admitted he had never experienced any violence in San Antonio. He testified that he had received a letter from his sister the week prior describing a feud between two neighboring towns over some government property, and this feud was taking place in "the area in which [he was] born." He had also spoken with his mother the day before the hearing; she told him "everything was bad" and that he should stay in the United States. Both of Juarez Chilel's parents and four of his siblings still live in San

-2-

Antonio. Juarez Chilel also testified that his brother was threatened by a machete-wielding gang member in Guatemala because he refused to join a gang, but that brother has been in the United States since 2005 or 2006. Juarez Chilel conceded none of his other family members in San Antonio have personally experienced violence or threats while living in Guatemala.

The IJ denied Juarez Chilel's application for asylum as time-barred because he failed to file the application within one year of his entrance into the United States and did not satisfy a statutory exception to the one-year requirement. The IJ also denied Juarez Chilel's request for withholding of removal and CAT relief on the merits and ordered his removal from the United States. The BIA affirmed the IJ's decision, finding that Juarez Chilel failed to demonstrate changed circumstances under 8 U.S.C. § 1158(a)(2)(D) and that he failed to establish his membership in a distinct social group for purposes of his request for withholding of removal. The BIA also found that Juarez Chilel's claim under the CAT was without a factual basis, as he failed to establish the Guatemalan government harmed him.

## II. Discussion

On appeal, Juarez Chilel argues his application for asylum is not time-barred because he established "changed circumstances" in accordance with 8 U.S.C. § 1158(a)(2)(D). For purposes of withholding of removal, he contends he has experienced past persecution and has a well-founded fear of future persecution not only because he refused to join a gang, but also because he is a member of the Mam ethnic group in Guatemala. Finally, he contends he will suffer torture if forced to return to Guatemala and thus should receive relief under the CAT.

We have jurisdiction to review final orders of removal pursuant to 8 U.S.C. § 1252(a)(1). This court "generally review[s] the BIA's decision as the final agency action, but where the BIA essentially adopted the IJ's opinion while adding

some of its own reasoning, we review both decisions." Osonowo v. Mukasey, 521 F.3d 922, 926 (8th Cir. 2008) (quotation omitted). "We review the agency determination that an alien is not eligible for asylum, withholding of removal, or relief under the Convention Against Torture using the deferential substantial evidence standard." Id. at 927. "Under this deferential standard of review, we are not at liberty to reweigh the evidence, and we will uphold the denial of relief unless the alien demonstrates that the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Id. (quotation omitted).

### a. Application for Asylum

Juarez Chilel entered the United States in September 2009, and he did not file an asylum application until November 2010. He therefore missed the one-year statutory deadline for requesting asylum. See 8 U.S.C. § 1158(a)(2)(B) (stating that asylum in the United States is not available to an alien "unless the alien demonstrates by clear and convincing evidence that the [asylum] application has been filed within 1 year after the date of the alien's arrival in the United States.").

There are exceptions to this one-year filing rule:

An application for asylum of an alien may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [one-year period].

8 U.S.C. § 1158(a)(2)(D). The IJ determined, and the BIA agreed, that Juarez Chilel did not meet any exception set forth in § 1158(a)(2)(D), and his application for asylum was deemed untimely.

-4-

When an IJ has "determined that the untimeliness of [the applicant's] asylum application was not excused by exceptional circumstances or changed conditions within the meaning of 8 U.S.C. § 1158(a)(2)(D), we lack jurisdiction to review [the applicant's] asylum claim." Mouawad v. Gonzales, 485 F.3d 405, 411 (8th Cir. 2007); see 8 U.S.C. § 1158(a)(3) ("No court shall have jurisdiction to review any determination of the Attorney General [as to whether an exception to the one-year application requirement applies]."); Jallow v. Gonzales, 472 F.3d 569, 571 (8th Cir. 2007) (holding that because the IJ determined the claimant did not satisfy one of the statutory exceptions to cure an untimely asylum application, the court is precluded from reviewing that timeliness determination on appeal). Juarez Chilel does not raise any "colorable constitutional challenges or questions of law, but instead . . . [quarrels] with the BIA's discretionary factual determination" that he failed to prove changed country circumstances to cure his untimely application, so we lack jurisdiction to review whether Juarez Chilel's asylum claim was timely filed. See Manani v. Filip, 552 F.3d 894, 900 (8th Cir. 2009) (quotation and internal citation omitted).

## b. Withholding of Removal

Juarez Chilel also sought withholding of his removal to Guatemala. The one-year deadline for an asylum application does not apply to a request for withholding of removal. See Mouawad, 485 F.3d at 411. "[T]he Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To qualify for withholding of removal, Juarez Chilel must show that he has experienced past persecution on account of one of those characteristics or that, based on that characteristic, there is "a clear probability that his . . . life or freedom would be threatened in the proposed country" if he were forced to return. Mouawad, 485 F.3d at 411 (quotations and internal citation omitted); see 8 C.F.R. § 1208.16(b)(1) and (2).

"A social group requires sufficient particularity and visibility such that the group is perceived as a cohesive group by society." Garcia v. Holder, 746 F.3d 869, 872 (8th Cir. 2014) (quotation and alteration omitted); see 8 U.S.C. § 1101(a)(42)(A). "Membership in a particular social group refers to persons who hold an immutable characteristic, or common trait such as sex, color, kinship, or . . . shared past experiences." Garcia, 746 F.3d at 872 (quotation and alteration omitted). "[T]he visibility requirement tests whether the members of the group are perceived as a group by society, such that these individuals suffer from a higher incidence of crime than the rest of the population." Id. at 873 (quotations omitted).

Before the IJ, Juarez Chilel contended he suffered past persecution and was concerned about future persecution because he refused to join a gang in Guatemala City. He asserts he is part of a "social group" made up of individuals who are victims of gang violence. "A group of persons defined as those who suffer violence because they refused to join criminal gangs lacks the visibility and particularity required to constitute a social group for purposes of 8 U.S.C. § 1101(a)(42)(A)." Ortiz-Puentes v. Holder, 662 F.3d 481, 483 (8th Cir. 2011) (quotation omitted); see also Constanza v. Holder, 647 F.3d 749, 754 (8th Cir. 2011) ("[P]ersons resistant to gang violence are too diffuse to be recognized as a particular social group." (Quotation omitted)). Similarly, Juarez Chilel has offered no evidence to support the conclusion that his purported group—those who refuse to join a gang and suffer from threats of violence as a result—shares "a common immutable characteristic," is "defined with particularity," or is sufficiently socially distinct to qualify as a "particular social group." See Matter of M-E-V-G-, 26 I. & N. Dec. 227, 237 (2014) (clarifying that "an applicant for asylum or withholding of removal seeking relief based on 'membership in a particular social group' must establish that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question."). Accordingly, his withholding of removal claim fails.

For the first time on appeal, Juarez Chilel asserts that he is part of another distinct social group—the Mam ethnic group. When asked at the hearing before the IJ what language he spoke, Juarez Chilel said he spoke both Spanish and the Mam language. This is the only reference in the hearing record to the ethnic Mam. More to the point, Juarez Chilel did not argue to the IJ that he was part of the Mam group or that his inclusion in that group was a reason for any past or future persecution for himself or his family. By failing to identify himself as a member of the Mam group or address its applicability to his requests for relief before the IJ or BIA, Juarez Chilel has failed to exhaust his administrative remedies on this issue. This court therefore does not have jurisdiction over his claim. See Constanza, 647 F.3d at 754 n. 3 ("'Failure to raise an issue before the agency constitutes a failure to exhaust administrative remedies and deprives this court of jurisdiction to hear the matter.'" (quoting Sultani v. Gonzales, 455 F.3d 878, 884 (8th Cir. 2006))).

In the alternative, Juarez Chilel argues that, once he testified that he spoke both Spanish and Mam, the IJ had a duty to develop the record regarding this potential social group. Juarez Chilel contends the IJ erred by failing to follow-up and ask him if he was also a member of the Mam ethnic group or another ethnic group in Guatemala and that this error should allow for remand. Any argument that the IJ had a duty to develop the record on this issue was not raised before the BIA. As a result, Juarez Chilel failed to exhaust his administrative remedies, and this issue is not properly before us. See Lybesha v. Holder, 569 F.3d 877, 882 (8th Cir. 2009) ("Petitioners did not raise any allegation of bias in their appeal, however. By not raising this issue before the BIA they failed to exhaust their administrative remedies and deprived this court of jurisdiction over this claim."); see also 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if—(1) the alien has exhausted all administrative remedies available to the alien as of right . . . .").[1]

_____

[1]On appeal, Juarez Chilel discusses the land feud near his hometown, but he fails to explain how this feud qualifies him for withholding of removal. While it is

### c. Convention Against Torture

To receive relief under the CAT, Juarez Chilel is not required to show he belongs to a protected group; rather, he "must demonstrate that it is more likely than not that [he] will be tortured if removed to Guatemala." Garcia, 746 F.3d at 873. "The torture must be 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" Id. (quoting 8 C.F.R. § 1208.18(a)(1)). "Demonstrating acquiescence of a public official requires proof that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." Id. (quotation omitted).

> This inquiry centers upon the willfulness of a government's non-intervention. A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties.

Id. (quotations and internal citation omitted). While it may be that "the Guatemalan government is less than successful at preventing the torture of its citizens by gang members," this conclusion alone does not mean that "the government is willfully blind toward it." Id. at 874.

Juarez Chilel asserts that the altercation with members of the Guatemala City gang amounted to torture, he fears future torture from gang violence, and the

---

unclear if he raised this issue before the IJ, it is evident that he has waived it on appeal. See Mambwe v. Holder, 572 F.3d 540, 550 n. 7 (8th Cir. 2009) (refusing to consider an argument not raised in the claimant's opening brief in an immigration appeal).

Guatemalan government acquiesces in the torture of people like him—those who resist gang violence. Yet he has offered no evidence to support his assertions. Juarez Chilel told law enforcement about his injury at the hands of gang members, but he admits he never followed up to determine whether they had taken any action in response. Without more, Juarez Chilel has failed to present a case of willful non-intervention by law enforcement sufficient to meet the requirements under the CAT. See Marroquin-Ochoma v. Holder, 574 F.3d 574, 580 (8th Cir. 2009) (finding that the evidence showed only weak, inexperienced law enforcement, not that the government acquiesced in gang activity).[2]

### III.  Conclusion

For the reasons above, we deny the petition for review.

_____

_____

[2]As with his withholding of removal claim, it is unclear whether Juarez Chilel argued before the IJ that he should receive CAT protection based on any unrest resulting from the land feud, but he has failed on appeal to explain how the Guatemalan government acquiesces in any torture of its citizens based on this feud. It is, therefore, waived. See Mambwe, 572 F.3d at 550 n. 7. To the extent Juarez Chilel asserts, for purposes of his petition for protection under the CAT, that the Guatemalan government acquiesces in the torture and persecution of the Mam ethnic group, this claim was not raised before the IJ or BIA, and we lack jurisdiction to address it. See Doe v. Holder, 651 F.3d 824, 830 (8th Cir. 2011).