# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1975

_____

Salome Garcia

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: April 15, 2016
Filed: July 13, 2016
[Unpublished]

_____

Before GRUENDER, BRIGHT, and KELLY, Circuit Judges.

_____

PER CURIAM.

Salome Garcia, a native and citizen of El Salvador, petitions for review of the Board of Immigration Appeals's ("BIA") decision denying his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), and ordering his removal. We deny Garcia's petition.

Garcia entered the United States without inspection on June 4, 1991. He was apprehended by the Immigration and Naturalization Service ("INS") one week later. At that time, the INS served Garcia with an order charging him with being deportable under the former section 241(a)(1)(B) of the Immigration and Nationality Act. Two months later, Garcia filed a motion to change venue from Harlingen, Texas to Los Angeles, California and also submitted a Form I-589 request for asylum, accompanied by a copy of his El Salvadoran birth certificate. Garcia's motion was granted, and he appeared for a hearing in Los Angeles on December 3, 1991. At the hearing, he withdrew his asylum application, received until May 3, 1992 for voluntary departure, and waived appeal. Garcia failed to depart the United States within the voluntary-departure period, and a warrant for his deportation was issued on February 9, 1995.

Meanwhile, on March 30, 1992, Garcia filed a second asylum application with the INS. In this application, Garcia falsely claimed to be a native and citizen of Guatemala and presented a falsified Guatemalan birth certificate. This application remained pending with the INS (and its successor agency, the United States Citizen and Immigration Services ("USCIS")) until August 2005, when Garcia testified to an asylum officer in Kansas City in support of his second asylum application. On March 25, 2008, the USCIS issued a notice of intent to deny his application. The USCIS found Garcia not credible, citing the discrepancies between his first and second asylum applications, particularly Garcia's birthplace. The USCIS formally denied Garcia's second asylum application on September 8, 2008.

The Department of Homeland Security ("DHS") subsequently initiated the current removal proceedings against Garcia, serving him with a notice to appear ("NTA") and charging him with being removable under 8 U.S.C. § 1182(a)(6)(A)(I) as an alien present in the United States without having been admitted or paroled. On October 13, 2011, Garcia appeared before an immigration judge ("IJ") and, through counsel, admitted the factual allegations in the NTA (except for his country of

nationality and citizenship) and conceded removability. The IJ designated El Salvador as the country of removal, with Guatemala as the alternative.

Seeking relief from removal, Garcia filed a third application for asylum, withholding of removal, and relief under the CAT. In evaluating this application, the IJ considered several documents, including the NTA; Garcia's 1992 asylum application; his October 2011 written pleading; his motion to permit the late filing of witness and exhibit lists for that day's hearing; Garcia's amended third I-589 asylum application; and notarized translations of newspaper articles regarding country conditions in El Salvador. The IJ also took administrative notice of the most recent State Department country-conditions reports for El Salvador and Guatemala, while excluding as untimely filed two exhibits that previously had been submitted and already were in the record. The IJ rendered a written decision denying Garcia's application because he had not presented credible testimony. The IJ nonetheless proceeded to the merits for "the sake of completeness," finding Garcia's claims defeated by fundamental changes in country conditions in El Salvador and Guatemala. The IJ granted Garcia a 60-day period of voluntary departure in lieu of removal or, failing voluntary departure, removal to El Salvador or, in the alternative, Guatemala. Garcia appealed to the BIA, which issued a written decision dismissing the appeal, declining to reinstate Garcia's period of voluntary departure, and ordering Garcia removed from the United States pursuant to the IJ's alternate order.

"We review the BIA's legal determinations *de novo*, but we accord substantial deference to the BIA's interpretation of the statutes and regulations it administers." *Etenyi v. Lynch*, 799 F.3d 1003, 1006 (8th Cir. 2015) (quoting *Garcia-Gonzalez v. Holder*, 737 F.3d 498, 500 (8th Cir. 2013)). We disturb the BIA's findings of fact only if unsupported by substantial evidence and if "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting *Goswell-Renner v. Holder*, 762 F.3d 696, 699 (8th Cir. 2014)).

Garcia contends that the BIA violated his due process rights by dismissing his appeal of the IJ's order because the dismissal was arbitrary, capricious, and an abuse of discretion. "To establish a due process claim, an alien must prove prejudice that 'potentially affects the outcome.'" *Zacarias-Velasquez v. Mukasey*, 509 F.3d 429, 434-35 (8th Cir. 2007) (quoting *Tun v. Gonzales*, 485 F.3d 1014, 1026 (8th Cir. 2007)). "We review de novo due process claims in immigration proceedings." *Id.* at 435.

Although, as Garcia argues, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), the entitlement to due process does not represent an entitlement to a favorable outcome of that process. Because the briefs supporting Garcia's petition do not raise any meaningful argument regarding how or why the BIA's dismissal violated his right to due process other than by its affirmance of the IJ's unfavorable decision , we consider such a broad due process claim waived. *See Awad v. Gonzales*, 494 F.3d 723, 727 (8th Cir. 2007) (declining to address a petitioner's due process claims because they "principally reiterate[d] his disagreement with the IJ's and BIA's determinations against him"); *Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004) (considering a claim waived when petitioner made "no meaningful argument on this claim in his opening brief"). Nonetheless, to the extent that Garcia challenges the IJ's exclusion of the two exhibits filed on the day of his merits hearing as untimely, Garcia cannot prove prejudice because, as the BIA noted, not only were the exhibits included elsewhere in the record, but they also were discussed in the IJ's written decision. Accordingly, Garcia's due process claim fails.

To the extent that Garcia's petition instead asserts a challenge to the IJ's adverse-credibility determination, this claim is not properly before us. We do not have jurisdiction to address claims not raised before the IJ or BIA. *Juarez Chilel v. Holder*, 779 F.3d 850, 856 n.2 (8th Cir. 2015). "[W]e review the IJ's findings *only* to the extent that they were adopted by the BIA." *Etenyi*, 799 F.3d at 1006. Here, the

BIA did not adopt any of the findings underpinning the IJ's adverse-credibility determination but instead found Garcia's appeal not to include a meaningful challenge of the IJ's adverse-credibility determination. Upon review of the record, we agree with the BIA that Garcia did not raise an adverse-credibility challenge. In his brief before the BIA, Garcia asserted as his primary basis for appeal that the IJ's decision to deny his I-589 application denied him due process because it was arbitrary, capricious, and an abuse of discretion. The remainder of his BIA appeal brief, similar to the briefs in support of his petition to our court, reiterated Garcia's arguments on the merits of his petition. Rather than arguing that the IJ committed specific errors, Garcia instead argued that the IJ erred by denying his petition on the merits. Such a "broad attempt to incorporate unspecified arguments d[oes]not 'raise' any particular issue before the Board." *Martinez Carcamo v. Holder*, 713 F.3d 916, 925 (8th Cir. 2013). Because we "do not expect the Board to address veiled arguments we would not consider ourselves," the BIA correctly found that Garcia had waived any challenge to the IJ's adverse-credibility determination. *See id.*

All applications for asylum and withholding of removal require a threshold determination of the applicant's credibility. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Because Garcia's claims for asylum and withholding of removal were dependent on the credibility of his testimony and because the IJ's adverse-credibility determination remains undisturbed, the BIA correctly determined that Garcia was not eligible for asylum or withholding of removal. *See Guled v. Mukasey*, 515 F.3d 872, 880-81 (8th Cir. 2008); *Lybesha v. Holder*, 569 F.3d 877, 881 (8th Cir. 2009) ("Because petitioners' withholding of removal . . . claim[] [is] based on the same inconsistent testimony, the adverse credibility findings are fatal to both claims.").[1] The BIA thus did not err by dismissing Garcia's appeal.

For the reasons set forth above, we deny Garcia's petition.

---

[1]As Garcia did not challenge the IJ's decision regarding his CAT claim before the BIA, we do not consider this claim here. *See Juarez Chilel*, 779 F.3d at 856 n.2.

-5-

BRIGHT, Circuit Judge, with whom KELLY, Circuit Judge, joins, concurring.

I concur in the court's opinion denying relief in court proceedings to petitioner Garcia.

I write separately to observe that in denying relief Garcia will be separated from his family – his wife and two adult daughters, all United States citizens.

Garcia has been a crime-free resident of this country for more than twenty years. A 2011 policy memorandum by U.S. Immigration and Customs Enforcement (ICE) Director John Morton directs ICE personnel to weigh certain factors when determining whether to exercise their prosecutorial discretion in removal proceedings consistent with the priorities of the agency, including "the person's length of presence in the United States"; "the person's criminal history"; and "whether the person has a U.S. citizen or permanent resident spouse, child, or parent." Memorandum from John Morton, Dir., U.S. Immigration & Customs Enf't, to All Field Office Directors, All Special Agents in Charge, All Chief Counsel, U.S. Immigration & Customs Enf't 4 (June 17, 2011), https://www.ice.gov/doclib/secure-communities/pdf/prosecutorial -discretion-memo.pdf.

This new policy took effect in June 2011, two months after the Department of Homeland Security initiated the current removal proceedings against Garcia. Nonetheless, this policy allows ICE personnel to exercise their prosecutorial discretion "at any stage of an enforcement proceeding." Id. at 5. I suggest that the agency may now wish to exercise prosecutorial discretion to save this family from a separate existence and allow Garcia to stay with his wife and daughters in the United States. Garcia does not seem to pose any risk of harm to anyone should he remain in this country.

_____