# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1334
_____

Alexander Arroyo-Sosa

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

_____

No. 22-2593
_____

Alexander Arroyo-Sosa

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: March 14, 2023
Filed: July 13, 2023

_____

Before SHEPHERD, ERICKSON, and GRASZ, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Alexander Arroyo-Sosa, a native and citizen of Mexico, petitions for review from two orders of the Board of Immigration Appeals (BIA) denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT) and denying his request to reopen and reconsider the denial of his applications. Having jurisdiction under 8 U.S.C. § 1252 and for the following reasons, we deny the petitions for review.

I.

On an unknown date in approximately 2000, Arroyo-Sosa entered the United States near El Paso, Texas, without being admitted or paroled. In 2016, after Arroyo-Sosa was convicted of filing an application for a false driver's license under Kansas law, the Department of Homeland Security (DHS) charged Arroyo-Sosa with removability as an alien present in the United States without having been admitted or paroled. Arroyo-Sosa appeared before an immigration judge (IJ), admitted the factual allegations in the Notice to Appear, and conceded removability. Then, in 2017, Arroyo-Sosa filed applications for asylum, withholding of removal, and CAT protection, claiming that, as a former member of a Mexican paramilitary group, he would be subject to violence from organized crime members if he were to return to Mexico.

In 2019, the IJ held a hearing on Arroyo-Sosa's applications and request for CAT protection. Arroyo-Sosa appeared at the hearing represented by his attorney, Alan Bell. Before turning to the merits of Arroyo-Sosa's applications, the IJ questioned Arroyo-Sosa about an affidavit he had filed prior to the hearing with the assistance of another attorney stating that he did not wish for Mr. Bell to continue representing him. Arroyo-Sosa affirmed that he signed the affidavit attesting that he

did not want Mr. Bell to continue to represent him. In the affidavit, Arroyo-Sosa also attested that he had paid Mr. Bell $33,000, but Mr. Bell had asked for more money, had not done any work on Arroyo-Sosa's behalf, and had been incorrect on the law. Arroyo-Sosa also testified that he had, one day after signing the affidavit, in a handwritten statement in English, expressed his satisfaction with Mr. Bell's representation. Arroyo-Sosa then testified that "[t]he treatment of Mr. Bell towards [his] case [had] been excellent." When questioned about the discrepancy between the affidavit and the handwritten statement, Arroyo-Sosa claimed that he did not fully understand the affidavit because it was written in English. After remarking that Arroyo-Sosa's handwritten statement was also in English and questioning whether Arroyo-Sosa understood English, the IJ asked Arroyo-Sosa if he had been coached to write his statement. Arroyo-Sosa confirmed he wrote the statement on his own, and that he was not forced to write it. The IJ also inquired about Arroyo-Sosa's knowledge of a complaint filed against Mr. Bell with the Missouri state bar on Arroyo-Sosa's behalf by another attorney. Arroyo-Sosa contended that he did not know about the complaint, and if the other attorney filed it on his behalf, it was without his knowledge or consent. Mr. Bell represented to the IJ that the complaint had been withdrawn prior to the hearing before the IJ. Ultimately, the IJ asked Arroyo-Sosa if he wanted Mr. Bell to continue to represent him, and Arroyo-Sosa responded: "Completely, in this case and in any following cases, if need be, your honor." At various points during this conversation, the IJ expressed doubt about Arroyo-Sosa's credibility based on the fact that "within 24 hours [Arroyo-Sosa] made two completely different statements," and that Arroyo-Sosa "called Mr. Bell, essentially, a thief and incompetent" and obtained new counsel before then saying, "No, Mr. Bell, forget about all those things." When pressed on the about-face on his claims against Mr. Bell, Arroyo-Sosa stated, "I have explained all the circumstances." Satisfied that Arroyo-Sosa wished to continue with Mr. Bell as his counsel, the IJ moved on to consideration of Arroyo-Sosa's applications.

Arroyo-Sosa testified on his own behalf, stating that he had previously been part of the Air Force Parachute Brigade in Mexico, which was an organization that fought drug traffickers. Arroyo-Sosa testified that he had been part of this group

-3-

from 1994 to 1998 and that he had been shot at one point during his service when the military helicopter he was traveling in sustained gunfire. Arroyo-Sosa testified that he engaged in various anti-drug activities, including destroying drug crops from the air and on the ground. Arroyo-Sosa said that, through this service, he formed political opinions opposing drug trafficking and the drug cartels, and testified that nearly 20 years after leaving Mexico, he still feared cartel retribution if he were to return to Mexico. Specifically, Arroyo-Sosa expressed fear that he would be harmed by the drug cartels due to his membership in the particular social group defined as "elite paratrooper brigade of the Mexican Air Force," and his political opinion of "fighting in a unit that combats the drug cartels."

The IJ issued an oral decision at the end of the hearing denying Arroyo-Sosa's applications for asylum and withholding of removal and denying him protection under CAT. The IJ first noted that Arroyo-Sosa had testified in an unresponsive and coached manner and did not answer questions directly, instead answering in an evasive manner that the IJ determined was an attempt to mislead the court. The IJ thus concluded that Arroyo-Sosa was not a credible witness. The IJ noted that it did not hear the testimony of two additional witnesses that Arroyo-Sosa had provided because they would not be able to provide any additional evidence to show a basis for relief when Arroyo-Sosa was unable to make a prima facie case for himself. The IJ then determined that Arroyo-Sosa's asylum claim was untimely because it was filed outside the requisite one-year window and Arroyo-Sosa failed to demonstrate any changed circumstances that would warrant extension of the deadline. The IJ next concluded that Arroyo-Sosa was not eligible for cancellation of removal because his previous Kansas conviction for false identification was a crime involving moral turpitude.

In the alternative, as to the merits of the asylum claim, the IJ concluded that Arroyo-Sosa was not eligible for asylum because his membership in the paramilitary group was voluntary, and his general anti-cartel or anti-crime opinions were insufficient to demonstrate a political opinion for which he would be targeted. As to the withholding-of-removal claim, the IJ determined that Arroyo-Sosa was not

entitled to relief because he failed to show he was targeted because of membership in a particular social group because membership in the military is not a socially distinct group, defined with particularity, and does not involve immutable characteristics. The IJ further noted that Arroyo-Sosa's failure to file an application until after he had spent nearly 20 years in the United States, along with other record evidence, undermined his claim that he left Mexico due to a threat of harm. Finally, as to the claim for CAT protection, the IJ determined there was no evidence that Arroyo-Sosa was tortured in the past, nor was there any evidence that he would be subject to torture in the future if he were to return to Mexico. The IJ also noted that Arroyo-Sosa's CAT claims related to potential harm at the hands of the cartels, and the Mexican government is actively fighting against the cartels.

Counsel for Arroyo-Sosa, Mr. Bell, filed a notice of appeal to the BIA. However, Mr. Bell passed away before the briefing schedule was set. Arroyo-Sosa obtained new counsel, who filed the appeal and a separate motion to remand, which alleged a claim of ineffective assistance of counsel based on Mr. Bell's previous representation of Arroyo-Sosa. The BIA accepted the appeal of the IJ's decision, despite its untimeliness. In his appeal, Arroyo-Sosa argued that his case should be remanded based on the ineffective assistance of Mr. Bell, referencing a more fulsome argument in his separate motion to remand; challenged the merits of the IJ's opinion; and asserted that the IJ had denied him a fair hearing.

The BIA affirmed the IJ's decision. Beginning with the merits of the IJ's opinion, the BIA concluded that the IJ did not clearly err in its credibility determination regarding Arroyo-Sosa. The BIA then noted that Arroyo-Sosa failed to challenge the IJ's determination that his asylum claim was untimely and upheld the IJ's denial of asylum on that basis. The BIA then affirmed the IJ's denial of withholding of removal, finding no clear error in the IJ's determination that Arroyo-Sosa's claim that he was targeted by a cartel as a member of the paramilitary group when his helicopter was fired upon was motivated by the group's attempts to destroy the cartel's crops, and not because of his membership in the paramilitary group or his political opinions. Further, the BIA agreed with the IJ that Arroyo-Sosa's claims

of harm due to his membership in this group were analogous to the inherent risks police officers or other law enforcement face while fighting crime, which is insufficient to demonstrate persecution. The BIA thus affirmed the IJ's determination that any past harm Arroyo-Sosa suffered was not on account of a protected ground and the IJ's conclusion that Arroyo-Sosa did not carry his burden of showing a clear probability of future harm based on a protected ground. As to Arroyo-Sosa's CAT claim, the BIA determined that Arroyo-Sosa did not challenge the merits of the IJ's denial of his CAT claim. Thus, the BIA found that Arroyo-Sosa waived any argument related to CAT protection.

Next, as to Arroyo-Sosa's claims that the IJ denied him a fair hearing by repeatedly interrupting Arroyo-Sosa and excluding additional witnesses, the BIA determined that the IJ acted within his authority to manage proceedings, and Arroyo-Sosa failed to show that, even if an error had occurred, he had been prejudiced by it. Finally, the BIA addressed Arroyo-Sosa's claim of ineffective assistance of counsel. While the BIA noted that "the record d[id] not show that [Arroyo-Sosa] filed a separate motion to remand," it nonetheless considered the argument for remand as presented in his appeal brief. Arroyo-Sosa claimed that he was entitled to cancellation of removal based on the hardship his children would face if he were removed, and, accordingly, Mr. Bell was ineffective for failing to apply for such relief on Arroyo-Sosa's behalf. First, the BIA noted that Arroyo-Sosa had not complied with the procedural requirements to maintain an ineffective-assistance-of-counsel claim. Further, the BIA determined that, even if Arroyo-Sosa's Kansas conviction did not disqualify him from cancellation of removal, he failed to offer any evidence showing a prima facie case of eligibility based on the hardship of qualifying relatives. The Board thus declined to remand the matter to the IJ to consider the ineffective assistance claims.

Arroyo-Sosa then filed a motion to reopen and to reconsider, which the BIA denied. As to the motion to reconsider, Arroyo-Sosa asserted that the BIA failed to consider his previously filed motion to remand, which contained additional evidence. Notwithstanding its initial finding that such a motion had not been filed,

-6-

the BIA recognized that it had in fact received Arroyo-Sosa's separate Motion for Remand with his appeal brief. However, the BIA noted that the motion was rejected as untimely and that Arroyo-Sosa's counsel was notified of the same. Accordingly, the BIA found that it had considered the record properly before it in its initial decision and that Arroyo-Sosa failed to identify a sufficient basis to reconsider it. As to the motion to reopen, Arroyo-Sosa asserted that the BIA applied the incorrect standard to his claim for cancellation of removal based on familial hardship. The BIA acknowledged Arroyo-Sosa's newly presented evidence but concluded the evidence overall, including his qualifying relatives' lack of medical problems and special educational needs, did not reflect a reasonable likelihood of success on his claim for relief. Arroyo-Sosa then filed two separate petitions for review: one challenging the BIA's denial of his motion to reopen and to reconsider and one challenging the BIA's affirmance of the IJ's denial of Arroyo-Sosa's asylum application.[1]

---

[1]In his briefing, Arroyo-Sosa also mentions in passing the denial of his application for withholding of removal, purportedly challenging the BIA's affirmance of the IJ's decision denying his application. However, Arroyo-Sosa's statement of the issues challenges only the denial of asylum, see Pet'r's Br. viii, and the argument in his brief is similarly limited to the asylum claim, see Pet'r's Br. 25-28, despite passing references to withholding of removal. We thus decline to address any argument related to the denial of Arroyo-Sosa's application for withholding of removal. See Fed. Ins. Co. v. Axos Clearing LLC, 982 F.3d 536, 542 n.5 (8th Cir. 2020) ("As [appellant's] initial Brief did not include this procedural issue in the Statement of the Issues presented for review, we need not consider it further." (citing Fed. R. App. P. 28(a)(5))); Waters v. Madson, 921 F.3d 725, 744 (8th Cir. 2019) (recognizing that points not meaningfully argued and accompanied by relevant authority are waived).

## II.

Arroyo-Sosa first asserts that the BIA erroneously denied the motion to reconsider and to reopen. As to the motion to reconsider, Arroyo-Sosa argues that the BIA violated his due process rights by failing to consider Arroyo-Sosa's motion to remand based on ineffective assistance. As to the motion to reopen, Arroyo-Sosa argues that the BIA applied the wrong legal standard in evaluating his claim of familial hardship. "We . . . review the BIA's decision denying a motion to reconsider for an abuse of discretion." Martinez v. Lynch, 785 F.3d 1262, 1264 (8th Cir. 2015). Further, "[w]e review the BIA's refusal to reopen . . . under the highly deferential abuse-of-discretion standard." Alva-Arellano v. Lynch, 811 F.3d 1064, 1066 (8th Cir. 2016). However, "[o]ur standard of review for legal determinations is de novo." Al Khouri v. Ashcroft, 362 F.3d 461, 463 (8th Cir. 2004).

Beginning with Arroyo-Sosa's claim regarding the motion to reconsider, "'[a] motion to reconsider addresses the merits of the BIA's initial decision' [ and] must 'specify the errors of law or fact in the previous order and . . . be supported by pertinent authority.'" Islas-Saldana v. Garland, 59 F.4th 927, 930 (8th Cir. 2023) (citation omitted). Due to the "government's legitimate interest in finality, which is heightened in removal proceedings where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States," motions to reconsider are "disfavored." Id. (citation omitted). We thus apply the deferential abuse-of-discretion standard to the BIA's determination on a motion to reconsider, finding an abuse of discretion "only where the BIA 'gives no rational explanation for its decision, departs from its established policies without explanation, relies on impermissible factors or legal error, or ignores or distorts the record evidence.'" Id. (citation omitted).

As to the merits of his claim, Arroyo-Sosa argues that the BIA should have granted his motion to reconsider because its refusal to consider his motion to remand left the BIA without a complete record and, accordingly, violated Arroyo-Sosa's due process rights. "It is well-settled that . . . aliens . . . are entitled to the Fifth

Amendment's guarantee of due process of law in deportation proceedings." Al Khouri, 362 F.3d at 464 (citations omitted). "The alien must have the opportunity to fairly present evidence, offer arguments, and develop the record." Muiruri v. Lynch, 803 F.3d 984, 986 (8th Cir. 2015). "To succeed on a due process claim, [the petitioner] must show fundamental procedural error and prejudice." Rubio v. Sessions, 891 F.3d 344, 351 (8th Cir. 2018). "Actual prejudice exists where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." Al Khouri, 362 F.3d at 466 (emphasis omitted) (citation omitted).

Here, the BIA did not abuse its discretion in denying Arroyo-Sosa's motion for reconsideration based on his due process claim because Arroyo-Sosa fails to demonstrate actual prejudice. Although Arroyo-Sosa asserts that the BIA failed to maintain a complete record by not considering his motion to remand, the BIA expressly considered the arguments Arroyo-Sosa raised in his motion to remand. Indeed, while the BIA expressly noted that "it did not consider the rejected and returned motion to remand because it was untimely filed," it nonetheless stated that it had "properly considered, but rejected, the respondent's ineffective assistance of counsel claim and his argument in support of eligibility for cancellation of removal . . . as articulated in his brief." Pet'r's Add. 28. Because the BIA considered and rejected the exact claims that formed the basis of Arroyo-Sosa's arguments for reconsideration, Arroyo-Sosa cannot show that that the "proceedings may well have resulted in a deportation that would not otherwise have occurred." See Al-Khouri, 362 F.3d at 466 (emphasis omitted) (citation omitted). We thus deny Arroyo-Sosa's petition for review on this basis.

Turning to Arroyo-Sosa's claim regarding the motion to reopen, this Court has recognized that such motions, like motions to reconsider, are disfavored. Islas-Saldana, 59 F.4th at 930. "For the BIA to grant a motion to reopen, the new evidence must have been 'neither available nor discoverable at the prior hearing' and must be 'material to the outcome of the proceeding.'" Xiu Ling Chen v. Holder, 751 F.3d 876, 878 (8th Cir. 2014) (citation omitted). To meet this standard, the "new facts

'must be such that they would likely change the result in the case.'" Id. (citation omitted).

Arroyo-Sosa asserts that the BIA erred in denying his motion to reopen because it applied the wrong legal standard to his claim that he was entitled to cancellation of removal based on the hardship his family would suffer in his absence. Under 8 U.S.C. § 1229b(b)(1)(D), a petitioner may be entitled to cancellation of removal if he demonstrates that "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." Although we generally are without "jurisdiction to review the Attorney General's exercise of his statutory discretion to grant cancellation of removal, the Supreme Court has confirmed that this statute did not remove the long-exercised judicial authority to review the BIA's denial of an alien's motion to reopen under a deferential abuse of discretion standard." Urrutia Robles v. Barr, 940 F.3d 420, 423 (8th Cir. 2019).

Arroyo-Sosa argues that, in assessing his motion to reopen, the BIA applied the standard from Matter of Coelho, which places on petitioner "the 'heavy burden' of showing that the new evidence presented 'would likely change the result in the case,'" instead of the lower standard enunciated in In re L-O-G-, which requires a petitioner to show a "reasonable likelihood of success on the merits." See In re L-O-G-, 21 I. & N. Dec. 413, 419-20 (BIA 1996) (quoting Matter of Coelho, 20 I. & N. Dec. 464, 473 (BIA 1992)). This Court has already considered the interplay between the two standards, stating that:

> We have repeatedly upheld the BIA's application of the Coelho likely-to-change-the-result standard, recognizing that "the BIA will remand only if the evidence is of such a nature that the Board is satisfied that if proceedings before the IJ were reopened, with all the attendant delays, the new evidence would likely change the result in the case."

Caballero-Martinez v. Barr, 920 F.3d 543, 548 (8th Cir. 2019) (emphasis omitted) (citation omitted). We also "specifically decline[d] to interpret L-O-G[-] as

-10-

abrogating <u>Coelho</u>," discussing the distinction between the two standards and noting that the <u>Matter of Coelho</u> standard applies where the petitioner "'had an opportunity to fully present and litigate his request for discretionary relief from deportation' before the immigration court." <u>Id.</u> (citation omitted). Based upon the record before us, we are convinced that Arroyo-Sosa had "an opportunity to fully present and litigate" his cancellation of removal claim based on familial hardship. However, this is immaterial because the record reflects that, while the BIA, in concluding its order, cited <u>Matter of Coelho</u>, in the substance of the analysis it in fact applied the <u>Matter of L-O-G-</u> standard, stating that "[o]verall, the newly submitted evidence does not reflect *a reasonable likelihood* that the respondent's removal would cause his United States citizen children exception and extremely unusual hardship." Pet'r's Add. 29 (emphasis added). Because the BIA applied the less-stringent standard, we are unpersuaded by Arroyo-Sosa's claim.

And, to the extent Arroyo-Sosa challenges the BIA's determination that he failed to provide sufficient evidence supporting his claim of familial hardship, we are without jurisdiction to review such a claim. <u>See</u> <u>Nunez-Portillo v. Holder</u>, 763 F.3d 974, 977 (8th Cir. 2014) ("By questioning whether the BIA accurately assessed or, ultimately, gave due weight to the[ familial hardship] factors, [petitioner] 'attacks the BIA determination that the evidence failed to show an "extraordinary and extremely unusual hardship." This finding, however, is precisely the discretionary determination that Congress shielded from our review.'" (citation omitted)). Arroyo-Sosa thus failed to show that the new facts would be likely to change the outcome, and the BIA did not abuse its discretion in denying his motion to reopen. Accordingly, we deny the petition for review.

III.

Arroyo-Sosa next asserts that the BIA erred in affirming the IJ's determination that Arroyo-Sosa was not entitled to asylum because the IJ violated his due process rights when he repeatedly interrupted Arroyo-Sosa, cut off his testimony, and would not allow him to present additional witnesses to testify in support of his applications.

-11-

Further, Arroyo-Sosa asserts that the BIA erred in affirming the IJ's denial of his asylum application because he successfully demonstrated membership in a protected group. We "generally review[] the BIA's decision as the final agency action, but where the BIA essentially adopted the IJ's opinion while adding some of its own reasoning, we review both decisions." Juarez Chilel v. Holder, 779 F.3d 850, 853 (8th Cir. 2015) (citation omitted). In reviewing a determination that a petitioner is not eligible for asylum, we apply "the deferential substantial evidence standard." Id. (citation omitted). Under this standard, "we are not at liberty to reweigh the evidence, and we will uphold the denial of relief unless the alien demonstrates that the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution." Id. (citation omitted). However, when a petitioner makes a procedural due process challenge, we apply a de novo standard of review, "as the question of whether an immigration hearing violates due process is a purely legal issue." Ramirez v. Sessions, 902 F.3d 764, 770 (8th Cir. 2018) (citation omitted).

Although Arroyo-Sosa argues the BIA erred in affirming the IJ's denial of his asylum application, Arroyo-Sosa failed to challenge before the BIA the IJ's alternative holding that Arroyo-Sosa was not entitled to asylum because his application was untimely, and the BIA deemed that this argument was waived. See Pet'r's Add. 19 ("The [IJ] pretermitted [Arroyo-Sosa]'s asylum application . . . because [Arroyo-Sosa] filed it outside of the 1-year deadline and did not present a qualifying exception. [Arroyo-Sosa] does not challenge this aspect of the [IJ]'s decision. Thus, we deem this issue waived and we uphold the [IJ]'s denial of asylum on this basis." (citations omitted)). Arroyo-Sosa similarly fails to offer any argument regarding the timeliness of his asylum application before this Court. And, in any event, we will not disturb the BIA's conclusion that this issue has been waived and is dispositive of the asylum application. See Rincon v. Garland, 70 F.4th 1080, 1086 (8th Cir. 2023) ("When the Board properly applies its own waiver rule, 'we will not permit an end run around those discretionary agency procedures by addressing the argument for the first time in a petition for judicial review.'" (citation omitted)). Because the timeliness of the asylum application is dispositive to the

merits of Arroyo-Sosa's asylum application, we need not consider his argument regarding his membership in a protect group. Further, because Arroyo-Sosa failed to challenge the timeliness of his asylum application, even if he were able to show a due process violation, he would be unable to show the requisite prejudice. <u>See Ramirez</u>, 902 F.3d at 772 (requiring a petitioner to show a fundamental procedural error and prejudice to prevail on a due process claim). Accordingly, we deny the petition for review.

IV.

For the foregoing reasons, we deny the petitions for review.

_____