# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-3733

_____

Eric Supangat

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: September 25, 2013
Filed: November 7, 2013
[Published]

_____

Before RILEY, Chief Judge, BRIGHT and BYE, Circuit Judges.

_____

PER CURIAM.

Eric Supangat petitions for review of the decision of the Board of Immigration Appeals (BIA) denying his claims for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We deny the petition.

## I.  Background

Supangat, a citizen of Indonesia, entered the United States on October 29, 2000, at the age of 23 on an F-1 student visa to attend Pacific Rim Language Institute in California.  He stopped attending the institution as of December 31, 2000, thereby failing to maintain or comply with the conditions of his nonimmigrant status, and making himself subject to removability under 8 U.S.C. § 1227 (a)(1)(C)(i).  On February 10, 2003, Supangat applied for asylum, withholding of removal, and protection under the CAT on the grounds that he had suffered past persecution in Indonesia because of his Chinese ethnicity and Christian religion and he feared such persecution upon his return.  After immigration officials instituted removal proceedings, Supangat conceded removability and reasserted his claims for asylum, withholding of removal, and protection under the CAT.

During a merits hearing before an immigration judge (IJ), Supangat testified that he converted to Christianity around age 11 or 12.  He remembered his religion causing problems for him and his family beginning around the time that he was 13 years old.  Supangat recalled that individuals, whom he identified as being Muslim, would demand money from him, steal his book bag, call him names, and harass him on his way to and from church and his Christian schools.  He claimed that in 1994, three Muslim men kidnapped him from a mall and drove him by taxi to a cemetery where they threatened him, put a knife to the back of his neck, took everything on him except his pants, and left him to walk barefoot.  Supangat asserted that after he opened a business with a friend in 1999, Muslims intimidated him and demanded money.  He further alleged that his family members were also subject to attacks and harassment, including incidents that occurred after he came to the United States in 2000.  Supangat testified that he did not report any of the incidents to the police in Indonesia because he believed that they were also Muslim and that they would not care.

After the hearing, the IJ concluded that Supangat's asylum application was untimely because he had filed it more than one year after his arrival to the United States. *See* 8 U.S.C. § 1158(a)(2)(B). The IJ further concluded that Supangat failed to establish that he was eligible for withholding of removal and protection under the CAT. The IJ denied Supangat's petition and ordered his removal to Indonesia.

Supangat appealed the IJ's decision to the BIA. The BIA dismissed Supangat's appeal, and incorporated the IJ's reasons in its decision. In reaching its decision, the BIA did not address the timeliness of the asylum claim. Supangat now petitions for a review of the BIA's decision.

## II.    Discussion

Supangat argues that the BIA erred by dismissing his appeal after finding that the incidents he described did not rise to the level of persecution that would afford him relief. He contends that the BIA failed to consider the aggregate harm he suffered and failed to consider a significant and traumatic event in its decision.

"We generally review the BIA's decision as the final agency action, but where the BIA essentially adopted the IJ's opinion while adding some of its own reasoning, we review both decisions." *Osonowo v. Mukasey*, 521 F.3d 922, 926–27 (8th Cir. 2008) (citation omitted) (internal quotation marks omitted). We review questions of immigration law de novo. *Tang v. INS*, 223 F.3d 713, 718-19 (8th Cir. 2000). We review an IJ's factual determinations under the substantial-evidence test, which requires that those determinations be supported by reasonable, substantial, and probative evidence. *Perinpanathan v. INS*, 310 F.3d 594, 597 (8th Cir. 2002). We will not reverse factual findings unless "the petitioner demonstrates that the evidence was so compelling that no reasonable fact finder could fail to find in favor of the petitioner." *Turay v. Ashcroft*, 405 F.3d 663, 667 (8th Cir. 2005).

## A.    Asylum and Withholding of Removal Claims

We first address Supangat's request for asylum and withholding of removal. The Attorney General may grant asylum to an individual unwilling to return to his or her country or origin because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1). We have defined persecution as "'the infliction or threat of death, torture, or injury to one's person or freedom' for a proscribed reason." *Shoaira v. Ashcroft*, 377 F.3d 837, 844 (8th Cir. 2004) (quoting *Regaldo-Garcia v. INS*, 305 F.3d 784, 787 (8th Cir. 2002)). "Persecution is an extreme concept and does not include low-level intimidation and harassment." *Zakirov v. Ashcroft*, 384 F.3d 541, 546 (8th Cir. 2004) (citation omitted). "[T]he refugee must show evidence of persecution that is sufficiently specific or imminent." *Lopez-Amador v. Holder*, 649 F.3d 880, 884 (8th Cir. 2011). "Low-level intimidation and harassment alone do not rise to the level of persecution, nor does harm arising from general conditions such as anarchy, civil war, or mob violence ordinarily support a claim of persecution." *Wijono v. Gonzales*, 439 F.3d 868, 872 (8th Cir. 2006) (citation omitted) (internal quotation marks omitted).

To qualify for withholding of removal, Supangat must show that there is a clear probability his "life or freedom would be threatened in Indonesia because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *Mompongo v. Gonzales*, 406 F.3d 512, 514 (8th Cir. 2005), *cert. denied*, 546 U.S. 937 (2005). In other words, Supangat "must establish that it is more likely than not that he will suffer persecution." *Ngure v. Ashcroft*, 367 F.3d 975, 989 (8th Cir. 2004) (citing *INS v. Stevic*, 467 U.S. 407, 429-30, (1984)). Withholding of removal requires "a more demanding standard than that for asylum." *Beck v. Mukasey*, 527 F.3d 737, 739 (8th Cir. 2008).

As described above, Supangat presented evidence that he was harassed and intimidated on his way to school, church, and work due to his ethnicity and his Christianity, and that he was once abducted and taken to a cemetery where he was threatened with a knife. The BIA adopted the IJ's reasoning and concluded that these incidents, "while frightening, did not rise to the level of persecution because they lacked severity or they were isolated acts of criminal conduct or lawlessness." The BIA also concluded that although Supangat may fear returning to Indonesia, that fear is not an objectively reasonable fear of persecution. The BIA further concluded that Supangat "failed to meet his burden of establishing a well-founded fear or that he faces a clear probability of persecution warranting the granting of asylum and withholding of removal if returned to Indonesia."

Although Supangat argues that the BIA did not consider the aggregate harm he suffered, including his abduction, the record nevertheless shows both the IJ's and the BIA's decisions are supported by substantial evidence and are supported by other cases of this nature, including cases involving captivity. *See Wijono*, 439 F.3d at 873 (concluding that there was no evidence that alien's detainment by Indonesian police, attack on street, or attack while in his father's business, were motivated by his Chinese ethnicity or Christian religion); *see also Setiadi v. Gonzales*, 437 F.3d 710, 713 (8th Cir. 2006) ("Even minor beatings or limited detentions do not usually rise to the level of past persecution."). Moreover, both the BIA and the IJ relied upon evidence in the record—namely, a 2009 United States Department of State Issue Paper on the treatment of Christians in Indonesia and a 2009 United States Department of State Human Rights Report for Indonesia—that indicates that the Indonesian government now promotes racial and ethnic tolerance and that violence against Christians and ethnic Chinese has declined in recent years. Such evidence further supports the BIA's conclusion that Supangat did not establish that it is more likely than not that he will suffer persecution. *Ngure*, 367 F.3d at 989; s*ee also Wijono*, 439 F.3d at 874 (affirming the BIA's determination that petitioner was not

eligible for withholding of removal based in part upon on a similar State Department report from 2001).

Accordingly, we conclude that substantial evidence supports the BIA's determination that Supangat is not eligible for asylum or withholding of removal.

### B.    Convention Against Torture Claim

We now turn to Supangat's claim that the BIA erred in denying him relief under the CAT. To qualify for protection under the CAT, Supangat must "establish that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2).

The BIA concluded that Supangat "provided insufficient evidence to suggest that he was tortured in Indonesia or that any government official in Indonesia likely would either torture him upon his return or acquiesce (to include the concept of willful blindness) in his torture by others." In denying Supangat's request, the BIA referenced the IJ's reliance upon the State Department reports—neither of which show any indication that the Indonesian government condones or participates in the persecution or torture of ethnic Chinese or Christians.

Supangat relies on the alleged factual showing supporting his application for asylum and withholding of removal. But that is not enough. *See Sow v. Mukasey*, 546 F.3d 953, 956 (8th Cir. 2008) ("Although claims of 'torture' and 'persecution' are not identical, when the two claims are based on the same allegations, it is unlikely that an applicant whose asylum application is rejected will be able to obtain relief under the CAT."). The standard for withholding of removal is more demanding than that for asylum, *Hasalla v. Ashcroft*, 367 F.3d 799, 803 (8th Cir. 2004), and Supangat has failed to meet that standard and failed to produce any evidence that he would be

tortured if he were removed. He cannot obtain relief under the CAT. *See Sow*, 546 F.3d at 957. Thus, the denial of CAT relief must be upheld.


## III. Conclusion

For the reasons stated above, we deny the petition for review.

––––––––––––––––––––––––––