# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1949

_____

Felix Somoza Garcia

*Petitioner*

v.

Eric H. Holder, Jr., Attorney General of United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: January 13, 2014
Filed: March 19, 2014

_____

Before GRUENDER, BRIGHT, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Felix Somoza Garcia ("Somoza"), a native and citizen of Guatemala, petitions for review of a Board of Immigration Appeals ("BIA") order dismissing his request for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). For the following reasons, we deny the petition.

## I. Background

Somoza illegally entered the United States through Arizona in June 2002. On November 15, 2009, the Department of Homeland Security ("DHS") charged him with removal as an alien present in the United States without having been admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(I). Somoza admitted to the DHS's factual allegations and conceded removability. In lieu of removal, Somoza requested asylum under § 1158(a), withholding of removal under § 1231(b)(3)(A), and relief under the CAT.[1]

Before the immigration judge ("IJ"), Somoza testified that he left Guatemala due to violence perpetrated against him by MS-13, also known as the Mara Salvatrucha gang. In June or July 2001, a five-man MS-13 posse, led by a man named Arturo, began violently extorting money from Somoza. He claimed to have suffered three violent attacks. After the first attack, Arturo required Somoza either to pay half of his salary to MS-13 or to join the gang. Somoza soon realized he could not survive on half of his earnings, so he told Arturo he was unable to pay. Somoza was attacked again, at which time he reported the violent situation to local police authorities. Somoza identified Arturo in a face-to-face encounter at the police station. The police arrested Arturo but released him a week later. Somoza heard that the police had accepted a bribe from MS-13. Upon learning of Arturo's release, Somoza fled Guatemala and spent approximately two months in El Salvador. However, fearing for the safety of his mother, he returned to Guatemala and was attacked a third

---

[1]The BIA determined that Somoza's asylum application was time-barred pursuant to 8 U.S.C. § 1158(a)(2)(B). Somoza concedes that we do not have jurisdiction to review this determination. *Id.* § 1158(a)(3). Therefore, his petition for review concerns only his application for withholding of removal under § 1231(b)(3)(A) and relief under the CAT.

time by MS-13 members. Somoza left Guatemala for the United States following this last attack.

Somoza argued he was entitled to withholding of removal because the violence against him was motivated by his "membership in a particular social group" and his "political opinion." *See id.* § 1231(b)(3)(A). Specifically, Somoza contended that he belonged to a social group consisting of "young Guatemalan men who have opposed the MS-13, have been beaten and extorted by that gang, reported those gangs to the police[,] and faced increased persecution as a result." He also claimed to hold a political opinion to "uphold[] the laws" by reporting gang violence to the police.

The IJ denied withholding of removal, concluding that Somoza's proffered social group and political opinion were not cognizable under § 1231(b)(3)(A). The IJ also denied him relief under the CAT, finding that the Guatemalan government was unlikely to instigate or acquiesce in his torture. Somoza appealed to the BIA, which dismissed Somoza's appeal and incorporated the IJ's reasoning and findings in its decision. Somoza now petitions this court for review of the BIA's order.

## II. Discussion

"We generally review the BIA's decision as the final agency action, but where 'the BIA essentially adopted the IJ's opinion while adding some of its own reasoning, we review both decisions.'" *Osonowo v. Mukasey*, 521 F.3d 922, 926-27 (8th Cir. 2008) (quoting *Eta-Ndu v. Gonzales*, 411 F.3d 977, 982 (8th Cir. 2005)). "We review questions of immigration law *de novo*." *Supangat v. Holder*, 735 F.3d 792, 795 (8th Cir. 2013). "We review an IJ's factual determinations under the substantial-evidence test, which requires that those determinations be supported by reasonable, substantial, and probative evidence." *Id.* "We will not reverse factual findings unless 'the petitioner demonstrates that the evidence was so compelling that no reasonable fact

finder could fail to find in favor of the petitioner.'" *Id.* (quoting *Turay v. Ashcroft*, 405 F.3d 663, 667 (8th Cir. 2005)).

To qualify for withholding of removal under § 1231, Somoza must demonstrate a clear probability that his "life or freedom would be threatened" on account of one of five enumerated grounds, including "membership in a particular social group" and "political opinion." 8 U.S.C. § 1231(b)(3)(A); *Supangat*, 735 F.3d at 795. Somoza argues that he was persecuted on account of (1) his membership in a particular social group defined by its opposition to and persecution by MS-13 and (2) his political opinion to "uphold[] the laws" by reporting gang violence to the police. Neither of these proffered statuses is legally sufficient to qualify for withholding of removal. We consider them each in turn.

"Membership in a particular social group 'refer[s] to persons who hold an immutable characteristic, or common trait such as sex, color, kinship, or . . . shared past experiences.'" *Constanza v. Holder*, 647 F.3d 749, 754 (8th Cir. 2011) (alterations in original) (quoting *Davila-Mejia v. Mukasey*, 531 F.3d 624, 628 (8th Cir. 2008)). "[A] social group requires sufficient particularity and visibility such that the group is perceived as a cohesive group by society." *Id.* In *Constanza*, we held that "'persons resistant to gang violence' are too diffuse to be recognized as a particular social group." *Id.* Somoza asserts his situation is distinguishable from mere resisters of gang violence because he identified Arturo face-to-face at the police station and suffered additional persecution as a result. In determining particularity, "[t]he 'central' question is whether the applicant's status as a member of a particular social group is the reason for that individual's persecution." *Gathungu v. Holder*, 725 F.3d 900, 908 (8th Cir. 2013). While identifying Arturo for the police may have contributed to MS-13's disdain for Somoza, MS-13 was already targeting Somoza for his refusal to relinquish half of his salary or to join its ranks. In addition, the visibility requirement tests "'whether the members of the group are perceived as a group by society,' such that 'these individuals suffer from a higher incidence of crime

-4-

than the rest of the population.'" *Gaitan v. Holder*, 671 F.3d 678, 680 (8th Cir. 2012) (quoting *Matter of S-E-G*, 24 I. & N. Dec. 579, 586-87 (BIA 2008)). Somoza has not presented any evidence indicating that persons who identify gang members to police suffer greater crime than other members of the population who resist gang violence. Therefore, his attempt to define a cognizable social group on this basis fails for lack of both particularity and visibility.

Somoza's proffered political status also fails under prior precedent of this court. *See Marroquin-Ochoma v. Holder*, 574 F.3d 574, 578-79 (8th Cir. 2009) (holding that opposition to a gang "does not compel a finding that the gang's threats were on account of an imputed political opinion"). Moreover, nothing in the record suggests that MS-13 targeted Somoza for political reasons. Rather, the gang attacked him for resisting its extortionate demands. Accordingly, the BIA's legal determinations were correct, and substantial evidence supports its decision to deny withholding of removal under § 1231(b)(3)(A).

Unlike § 1231, the CAT does not require Somoza to show he belongs to a protected group. *Id.* at 579. "Rather, to qualify for CAT relief, [Somoza] must demonstrate that it is more likely than not that [he] will be tortured if removed to Guatemala." *Id.* (citing 8 C.F.R. § 1208.16(c)(2)). The torture must be "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Because Somoza does not contend that his predicted torture would be by or at the instigation of or with the consent of Guatemalan officials, he must show that public officials will acquiesce in his torture. Demonstrating "acquiescence of a public official" requires proof "that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id.* § 1208.18(a)(7). "This inquiry centers upon the willfulness of a government's non-intervention." *Mouawad v. Gonzales*, 485 F.3d 405, 413 (8th Cir. 2007). "A government does not acquiesce in the torture of its citizens merely because

it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." *Marroquin-Ochoma*, 574 F.3d at 579 (quoting *Mouawad*, 485 F.3d at 413).

Here, the record does not compel the conclusion that it is more likely than not that Somoza will be tortured with the acquiescence of a public official. Although a 2010 Department of State Human Rights Report on Guatemala observes that two-thirds of Guatemalan police districts remained understaffed, another country report indicates that Guatemala has partnered with the United Nations, the United States, Canada, and several European countries to enact anti-gang and anti-narcotics reform and to improve law enforcement practices. In this case, Guatemalan authorities investigated and even arrested Arturo after Somoza reported the gang violence, which demonstrates that local authorities are not unwilling to control MS-13. *See Gutierrez-Vidal v. Holder*, 709 F.3d 728, 733 (8th Cir. 2013) (holding, under substantial-evidence review, that local authorities are not unwilling to control gang violence where evidence indicates that they investigated the gang and made arrests). Somoza, however, claims to have heard that MS-13 bribed local police to release Arturo—an allegation he argues supports a conclusion that Guatemalan police would acquiesce in his torture if he is returned now. While it is possible that corruption contributed to Arturo's release over ten years ago, the country reports provide numerous alternative explanations that do not involve government corruption. The Department of State report observes that many criminals avoid prosecution because "[j]udges, prosecutors, plaintiffs, and witnesses" experience frequent "threats, intimidation, and surveillance." Somoza acknowledged that he was "not sure if the police received this type of extortion or if it was something else" that precipitated Arturo's release from custody. Without more, the inability of Guatemalan police to curtail MS-13 violence does not entitle Somoza to CAT relief. *See Menjivar v. Gonzales*, 416 F.3d 918, 923 (8th Cir. 2005) (holding that, to obtain CAT relief, it is insufficient merely to show that "the government has a problem controlling gang activity of which it is aware"). While the evidence may support the conclusion that

-6-

the Guatemalan government is less than successful at preventing the torture of its citizens by gang members, the record does not compel the conclusion that the government is willfully blind toward it.  Therefore, we conclude that substantial evidence supports the BIA's decision to deny relief under the CAT.

**III. Conclusion**

For the foregoing reasons, we deny Somoza's petition for review.

_____