# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-2102
_____

Arminda Del Carmen Santacruz

*Petitioner*

v.

Loretta E. Lynch, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: October 20, 2016
Filed: December 23, 2016
[Unpublished]
_____

Before WOLLMAN, SMITH, and COLLOTON, Circuit Judges.
_____

PER CURIAM.

Arminda Del Carmen Santacruz petitions for review of the Board of Immigration Appeals's (BIA) order dismissing her appeal of an immigration judge's (IJ) denial of her applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). We deny the petition for review.

Santacruz, a native and citizen of El Salvador, entered the United States without inspection or documentation in November 2009. After the Department of Homeland Security initiated removal proceedings, Santacruz conceded that she was removable and applied for asylum, withholding of removal, and CAT relief. She asserted that she had been abused in El Salvador by Oscar Garcia, her former domestic partner and the father of her two children, and that she feared future abuse by Garcia if she were forced to return.

At a hearing before the immigration judge (IJ), Santacruz testified that she lived with Garcia in his father's home from 1995 to 2006 and that Garcia began to mistreat her after they had been living together for about three years. She stated that Garcia "would come home very aggressive" and that he mistreated her "[a] lot of times." She testified that in 2001 or 2002, Garcia arrived home intoxicated, broke a mirror, and "hugged" her while holding a piece of broken glass as if "he was going to do something on [her] throat." She also testified that on another unspecified occasion, Garcia came home intoxicated and "very aggressive" and insulted her by calling her "a big crazy woman and . . . a prostitute." In addition to incidents involving Garcia, Santacruz testified that, while she was growing up, both her uncle and her stepfather attempted to rape her on separate occasions but that her grandmother intervened each time. Santacruz also stated that her stepfather threatened her mother with a machete in 1996 or 1997. Although the police were called, they did not arrest her stepfather. She also testified that after being raped, her young cousin went to the police, who took her to the hospital but ultimately "didn't do anything about it."

Santacruz stated that in October 2006, Garcia beat her with his fists, kicked her, and attempted to rape her because she questioned him about his mistress. Immediately after this incident, Santacruz took her children, who had been playing outside; left Garcia; and moved in with her mother, who lived some distance away in the same town. She stated that Garcia came to her mother's house a few months later,

threatened to take the children, and again attempted to rape her, but that she was able to escape by running to her grandmother's house nearby. She later once saw Garcia while she was leaving work but was able to get home in a taxi "through different streets." Garcia thereafter contacted her on one occasion, when he again came to her mother's house and threatened to take the children. After Santacruz threatened to call the police, Garcia left and did not contact her again. She related no other specific incidents of abuse by Garcia, and she testified that she was able to work from the time she left Garcia in 2006 until she left El Salvador in 2009. She also stated that she never called the police to report Garcia's abuse and that she never sought medical treatment for an injury related to that abuse. Santacruz testified that she eventually decided to leave El Salvador in 2009 because she "was in despair," she did not have Garcia's "support anymore," and she "felt trapped without . . . any type of protection from [anyone]." She stated that she was afraid to return to El Salvador because Garcia might once again hurt her.

The IJ found Santacruz "to be generally credible," but denied her claim for asylum because she had failed to establish that she suffered harm rising to the level of persecution, that the Salvadoran government was unwilling or unable to control Garcia, or that she was a member of either of her proposed particular social groups—Salvadoran women in domestic relationships who are unable to leave or Salvadoran women who are viewed as property by virtue of their domestic relationships. The IJ also concluded that because Santacruz failed to establish her eligibility for asylum, she necessarily failed to meet the more demanding standards to establish her eligibility for withholding of removal and CAT relief.

The BIA upheld the IJ's decision to deny relief, agreeing with the IJ's reasoning in all respects. As to Santacruz's claim for CAT relief, the BIA acknowledged that the country reports and other evidence submitted by Santacruz "demonstrate[d] that domestic violence continues to be a difficult situation in El

Salvador," but that the reports and evidence also demonstrated "that the government [was] taking steps to improve the situation for victims of domestic abuse."

Santacruz argues that the BIA erred in determining that she had failed to establish that she suffered past persecution or had a well-founded fear of future persecution, that she was a member of a cognizable particular social group, and that the Salvadoran government was unwilling or unable to control her persecutor. We review the BIA's decision for substantial evidence on the record as a whole and will not reverse its "factual findings unless 'the petitioner demonstrates that the evidence was so compelling that no reasonable fact finder could fail to find in favor of the petitioner.'" Garcia v. Holder, 746 F.3d 869, 872 (8th Cir. 2014) (quoting Supangat v. Holder, 735 F.3d 792, 795 (8th Cir. 2013) (per curiam)); see also 8 U.S.C. § 1252(b)(4)(B) (stating that findings of fact cannot be disturbed "unless any reasonable adjudicator would be compelled to conclude to the contrary"). We review the BIA's legal determinations *de novo*, giving due deference to the BIA's interpretation of the statutes and regulations it administers. Salman v. Holder, 687 F.3d 991, 994 (8th Cir. 2012). To the extent the BIA adopted the findings or reasoning of the IJ, we consider the two decisions together. Garcia, 746 F.3d at 872.

To qualify for asylum, Santacruz bears the burden of demonstrating that she is unable or unwilling to return to El Salvador because of past persecution or a well-founded fear of future persecution on account of her "membership in a particular social group." See 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1). To qualify for withholding of removal, Santacruz bears the even higher burden of demonstrating a "clear probability" that she will be persecuted on account of her membership in a particular social group. See Khrystotodorov v. Mukasey, 551 F.3d 775, 781 (8th Cir. 2008) (noting "more stringent" standard of proof for withholding of removal). Persecution is an "'extreme concept' that involves the infliction or threat of death, torture, or injury to one's person or freedom on account of a protected characteristic," Shaghil v. Holder, 638 F.3d 828, 834 (8th Cir. 2011) (quoting Malonga v. Holder,

-4-

621 F.3d 757, 764 (8th Cir. 2010)), and "does not encompass low-level intimidation and harassment," Ladyha v. Holder, 588 F.3d 574, 578 (8th Cir. 2009) (quoting Gutierrez-Olivares v. Mukasey, 533 F.3d 946, 949 (8th Cir. 2008)). Finally, to qualify for CAT relief, Santacruz must establish that it is more likely than not that she would be subjected to torture if she were returned to El Salvador—a "more onerous" standard than that for asylum or withholding of removal "in that a likelihood of torture requires more than a well-founded fear of persecution" and "may encompass abuse that is more severe than persecution." Khrystotodorov, 551 F.3d at 782.

Santacruz had no further contact with Garcia after 2007, and she continued to live and work in the same town unmolested by Garcia until 2009, when she left El Salvador for the United States. The mistreatment experienced by Santacruz does not rise to the level of persecution and was thus insufficiently severe to compel a finding of past persecution. See, e.g., Garcia-Colindres v. Holder, 700 F.3d 1153, 1157 (8th Cir. 2012) (holding no past persecution where applicant was detained for eight hours, beaten, burned with a cigarette, and threatened with violence); Malonga, 621 F.3d at 765 (noting that "evidence of isolated violence does not compel a finding of persecution" and concluding that beatings, injuries, and detention, although "not insignificant," did not compel such a finding (citation omitted)).

Santacruz argues that the BIA did not consider all of the incidents of mistreatment by Garcia that she suffered in the past. But the BIA agreed with the IJ that Santacruz did not present sufficient evidence to establish those other alleged incidents of abuse. Santacruz vaguely referred to Garcia as "always [being] very aggressive" to her and mistreating her "lot[s] of times," but she provided no details to support these assertions. The October 2006 incident was the only occasion in which Garcia physically assaulted her. The BIA was not required to "list every possible positive and negative factor in its decision" or "write an exegisis on every contention." Malonga, 621 F.3d at 764 (citation omitted). Rather, it was required only to "consider the issues raised, and announce its decision in terms sufficient to

enable a reviewing court to perceive that it has heard and thought and not merely reacted." Id. (quoting Barragan-Verduzco v. I.N.S., 777 F.2d 424, 426 (8th Cir. 1985)). The BIA recognized and considered the evidence presented by Santacruz and properly accepted the testimony that was sufficiently detailed and specific.

Despite her failure to show past persecution, Santacruz may still qualify for asylum if she shows a well-founded fear of future persecution, which requires "both that [s]he actually fears persecution and that a 'reasonable person in [her] position would fear persecution if returned to [her] native country." Setiadi v. Gonzales, 437 F.3d 710, 714 (8th Cir. 2006) (quoting Berte v. Ashcroft, 396 F.3d 993, 996 (8th Cir. 2005)). We find no error in the BIA's decision regarding Santacruz's failure to establish a well-founded fear of future persecution. Given that Santacruz was able to live and work unmolested by Garcia for several years before she left El Salvador, she has not shown that a reasonable person in her position would fear the complained-of persecution in the future if she were returned to El Salvador. See id.

Santacruz's failure to establish that she suffered past persecution or that she has a well-founded fear of future persecution sufficient to qualify for asylum precludes a finding of the more onerous clear probability of persecution necessary to qualify for withholding of removal. Khrystotodorov, 551 F.3d at 781; see also Saldana v. Lynch, 820 F.3d 970, 978 (8th Cir. 2016) ("Because the [BIA] permissibly rejected the petitioners' claim for asylum, it follows that petitioners did not meet the higher standard of proof for withholding of removal.").

Likewise, her insufficient showing on the issue of persecution renders moot her arguments regarding her membership in one of her proposed particular social groups. See Saldana, 820 F.3d at 975-77 (declining to address particular-social-group issue, but denying petition for review due to insufficient evidence that harm inflicted by private actors was "persecution" that government condoned or was unable to control); Salman, 687 F.3d at 995 (concluding that because petitioner's failure to establish

government acquiescence in harassment was fatal to asylum claim, the court need not address whether harassment rose to the level of persecution or was based on a statutorily protected ground); Gutierrez-Vidal v. Holder, 709 F.3d 728, 733 n.1 (8th Cir. 2013) (noting that because petitioner did not demonstrate harm amounting to persecution, asylum claim failed regardless of relocation issue). Because a "likelihood of torture requires more than a well-founded fear of persecution" and "may encompass abuse that is more severe than persecution," it also follows that Santacruz failed to establish that she was entitled to CAT relief. Khrystotodorov, 551 F.3d at 782.

The petition for review is denied.

_____