# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1486

_____

Erick Isabel Ruiz-Garcia

*Petitioner*

v.

Jefferson B. Sessions, III, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: January 8, 2018
Filed: April 27, 2018
[Unpublished]

_____

Before GRUENDER, MELLOY, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Erick Isabel Ruiz-Garcia petitions for review of the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In 2014, at the age of fifteen, Ruiz-Garcia entered the United States from his native Guatemala and was detained by a U.S. Border Patrol agent. He was charged in removal proceedings as an alien present in the United States without

having been admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Though he was classified as an unaccompanied alien child, *see* 6 U.S.C. § 279(g)(2), he was released to the custody of his mother, who was living in Faribault, Minnesota with no immigration status. Eventually, Ruiz-Garcia's case was referred to an Immigration Judge ("IJ") for the adjudication of his application for asylum, withholding of removal, and protection under the CAT. Ruiz-Garcia admitted to being present in the United States without having been admitted or paroled but sought relief based on his fear of the persecution and torture that would ensue if he were removed to Guatemala. He testified that he had been approached by members of the Mara 18 gang on three occasions and that each time he was pressured in increasingly violent ways to join them. In the first incident, gang members approached Ruiz-Garcia, shoved him, and told him to join the gang. At a later time, he was beaten after refusing to join. On the third encounter, the gang members told Ruiz-Garcia that he "had to rape a girl within a week" as a form of gang initiation, threatening that he would be killed if he failed to do so. Ruiz-Garcia did not report these incidents to law enforcement because his cousin had been beaten after reporting similar conduct and because he believed the police to be "friendly" with the gang.

After hearing the evidence, the IJ found Ruiz-Garcia credible but denied his applications for asylum, withholding of removal, and protection under the CAT. The Board of Immigration Appeals ("BIA") affirmed the IJ's denial of asylum and withholding of removal, given that Ruiz-Garcia did not show he was a member of "a cognizable particular social group," but remanded for the IJ to consider evidence and make findings on "whether the Guatemalan government would be willfully blind to [Ruiz-Garcia's] torture by the Mara 18" for purposes of the CAT. On remand, the IJ reviewed Ruiz-Garcia's testimony and the country-conditions evidence and found that the Guatemalan government was not likely to acquiesce in the torture of children who resist joining the Mara 18. The BIA agreed with the IJ's analysis and dismissed the appeal. Ruiz-Garcia now petitions for review on all three grounds: asylum, withholding of removal, and protection under the CAT.

We review questions of law *de novo* and "consider administrative findings of fact under the deferential substantial-evidence standard." *Malonga v. Holder*, 621 F.3d 757, 764 (8th Cir. 2010). "We will not overturn an agency's decision unless [the petitioner] demonstrates that the evidence not only supports a contrary conclusion, but *compels* it." *Id.* "Because the BIA's decision is the final decision of the agency, it is the subject of our review. To the extent, however, that the BIA adopted the findings or the reasoning of the IJ, we also review the IJ's decision as part of the final agency action." *Falaja v. Gonzales*, 418 F.3d 889, 894 (8th Cir. 2005) (citation omitted).

To establish eligibility for asylum, an applicant carries the burden of showing that he meets the definition of "refugee": a person who is "unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Withholding of removal requires that the alien's life or freedom would be threatened because of one of the same enumerated grounds. *Id.* § 1231(b)(3)(A). As relevant here, we have recognized three elements that make up a "particular social group": (1) the group is composed of members who share "a common immutable characteristic"; (2) the group is "defined with particularity"; and (3) the group is "socially distinct within the society in question." *Juarez Chilel v. Holder*, 779 F.3d 850, 855 (8th Cir. 2015) (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014)). Here, the IJ and BIA both determined that Ruiz-Garcia was ineligible for asylum and withholding of removal because he failed to show that he was part of a cognizable social group and thus failed to show that his purported persecution was on account of one of the enumerated grounds.

Ruiz-Garcia claims he was targeted on the basis of his membership in the social group of "children unwilling to participate in the Mara 18 gang." But we have repeatedly found that "'persons resistant to gang violence' are too diffuse to be

recognized as a particular social group." *See, e.g.*, *Garcia v. Holder*, 746 F.3d 869, 872, 873 (8th Cir. 2014) (finding that a petitioner who claimed to be from a social group including "young Guatemalan men who have opposed [a gang]" failed to demonstrate both the particularity and visibility required of a cognizable social group); *Juarez Chilel*, 779 F.3d at 855 (finding that the petitioner failed to demonstrate that "those who refuse to join a gang and suffer from the threats of violence as a result" constituted a protected social group). Similarly, here, substantial evidence supports the BIA's findings that Ruiz-Garcia's proposed group "lacks particularity"; "is amorphous and lacks definable boundaries"; "could include persons of any background"; and is not "perceived, considered, or recognized by Guatemalan society to be a distinct social group." Indeed, Ruiz-Garcia offers no evidence that would compel a different finding as to the underlying elements of a social group. Thus, the BIA did not err in concluding that Ruiz-Garcia "has not demonstrated membership in a cognizable particular social group." Accordingly, his asylum and withholding of removal claims fail.

Unlike asylum and withholding of removal, however, the CAT does not require Ruiz-Garcia to demonstrate that he is a member of a protected group. "Rather, to qualify for CAT relief, [Ruiz-Garcia] must demonstrate that it is more likely than not that [he] will be tortured if removed to Guatemala." *See Garcia*, 746 F.3d at 873. "The torture must be 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Id.* (quoting 8 C.F.R. § 1208.18(a)(1)). "Acquiescence" requires that the public official have prior awareness that the torture will occur "and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7). "A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." *Garcia*, 746 F.3d at 873.

Ruiz-Garcia contests the finding that the Guatemalan government is not likely to acquiesce in his torture by the Mara 18 gang. He claims that "the BIA misstated clear evidence of [Guatemalan government] acquiescence" in "the torture of youth opposing the gangs." He points to the State Department's 2015 Human Rights Report and the "Gangs in Central America" report, referenced by the BIA, which highlight Guatemala's struggle both with gangs and corrupt police. Nevertheless, a comprehensive review of the country-conditions evidence led the IJ to conclude that "the evidence clearly suggests that the [Guatemalan] government is making whatever efforts it can to punish both gangs and corrupt officials." The BIA agreed, citing, among other things, evidence of Guatemalan enforcement operations "to round up suspected gang members," "government-sponsored gang prevention programs," and the Guatemalan president's commitment of military resources to domestic-security efforts. In addition, the BIA determined that Ruiz-Garcia failed to offer evidence supporting a finding of government complicity in gang activities. Accordingly, the BIA found that Ruiz-Garcia "has not identified evidence sufficient to meet his burden of proof for protection under the CAT." That conclusion is supported by substantial evidence. *See Saldana v. Lynch*, 820 F.3d 970, 978 (8th Cir. 2016) ("Evidence concerning the Mexican government's efforts to combat criminal organizations . . . was sufficient to support the [BIA's] finding that the government was not likely to acquiesce in any torture by [a criminal organization].").

For the foregoing reasons, we deny Ruiz-Garcia's petition for review.

_____