# United States Court of Appeals
## For the Eighth Circuit

_____

Nos. 18-3704/19-2368

_____

Raju Ahmed

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: June 18, 2020
Filed: September 4, 2020

_____

Before LOKEN and GRASZ, Circuit Judges, and CLARK,[1] District Judge.

_____

CLARK, District Judge.

Petitioner Raju Ahmed, a citizen of Bangladesh, entered the United States on a student visa. While in the country, he was convicted of two aggravated felonies. When the Department of Homeland Security moved to deport Ahmed based on those convictions, Ahmed sought deferral of removal under the Convention Against

---

[1]The Honorable Stephen R. Clark, United States District Judge for the Eastern District of Missouri, sitting by designation.

Torture (CAT), 8 C.F.R. § 1208.16(c), claiming a fear of torture because he is a convert from Islam to Christianity. Finding that Ahmed had failed to show he was more likely than not to face torture if removed, the Immigration Judge denied his request for deferral and the Board of Immigration Appeals (Board) affirmed. Ahmed later moved the Board to reopen his case, claiming new evidence, and the Board denied his motion to reopen.

Ahmed petitioned this Court for review of the Board's decisions. We deny the petitions for review.

## I.    Background

Ahmed is a native and citizen of Bangladesh. He entered the United States on a non-immigrant student visa in 2000. In 2005, Ahmed, pleaded guilty to two felonies in Kansas: attempted aggravated burglary and attempted aggravated sexual battery. He was sentenced to 24 months in prison and 48 months of probation.

In 2006, the Department of Homeland Security issued Ahmed an administrative order of removal pursuant to section 238 of the Immigration and Nationality Act (INA). Section 238 provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The statute defines "aggravated felony" to include a "burglary offense for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(G). Despite issuance of the final administrative order of removal in 2006, DHS did not enforce the order or remove Ahmed to Bangladesh, but released him subject to an Order of Supervision.

For the next twelve years, Ahmed continued to reside and work in the United States. In 2015, he married his wife. Together, the couple have two daughters, who are United States citizens.

In 2018, DHS moved to execute the final administrative order of removal. Before he was removed, Ahmed expressed a fear of persecution and torture if he was

removed to Bangladesh because of his conversion from Islam to Christianity. An Immigration Judge conducted a merits hearing on Ahmed's application for relief from removal. Ahmed sought relief on two grounds: withholding of removal under INA section 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection from removal under the CAT. Finding Ahmed was ineligible for withholding of removal under INA section 241(b)(3) because of his felony convictions, the Immigration Judge considered Ahmed's request for deferral of removal under the CAT. The Immigration Judge concluded that the evidence did not show Ahmed was more likely than not to be tortured if removed to Bangladesh, and thus denied his application for relief from removal under the CAT.

Ahmed appealed the Immigration Judge's decision to the Board of Immigration Appeals. The Board agreed with the Immigration Judge's conclusion that Ahmed did not meet his burden to show that he was more likely than not to suffer torture if removed, and dismissed the appeal. Ahmed then filed his first petition for review in this Court. While that appeal was pending, Ahmed filed a motion to reopen with the Board, claiming new evidence. The Board denied the motion to reopen, noting that Ahmed failed to explain why the newly-proffered evidence was unavailable at the time of his hearing, and finding that the new evidence was not likely to alter the Immigration Judge's decision. Ahmed petitioned this Court for review of the Board's denial of his motion to reopen, and we consolidated that petition with his first petition.

## II.    Discussion

At the outset, we note that the Supreme Court's recent decision in *Nasrallah v. Barr*, 140 S. Ct. 1683 (2020) directly informs the scope of our review. Before *Nasrallah*, several circuits, including this one, held that 8 U.S.C. § 1252(a)(2)(C), sometimes known as the "criminal alien bar," applied to petitions for review of orders denying deferral under the CAT. *See, e.g., Gallimore v. Holder*, 715 F.3d 687, 690 (8th Cir. 2013). The criminal alien bar provides that: "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed" a covered offense, including any aggravated felony.

8 U.S.C. §§ 1252(a)(2)(C); 1227(a)(2)(A)(iii). Accordingly, under this Circuit's pre-*Nasrallah* precedent, our jurisdiction to review orders denying deferral under the CAT was limited to "constitutional claims or questions of law." *Cherichel v. Holder*, 591 F.3d 1002, 1009 (8th Cir. 2010) (quoting 8 U.S.C. § 1252(a)(2)(D)).

In *Nasrallah*, the Supreme Court held that an order denying deferral under the CAT is not a "final order of removal," and, therefore, the criminal alien bar does *not* preclude judicial review of a noncitizen's factual challenges to such an order. 140 S. Ct. at 1694. Thus, we have jurisdiction to consider Ahmed's factual challenges, as well as any colorable constitutional claims or questions of law raised by his petitions.

The Court reviews Ahmed's factual challenges under the substantial-evidence standard. *Nasrallah*, 140 S. Ct. at 1692. This review is "highly deferential." *Id.* "The agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)); *see also Ngugi v. Lynch*, 826 F.3d 1132, 1136 (8th Cir. 2016) ("Under the substantial evidence standard, the agency's findings of fact must be upheld unless the alien demonstrates that the evidence he presented not only supports a contrary conclusion but *compels* it.") (emphasis in original). We review questions of law *de novo*.

Because the parties completed their briefing before the Supreme Court decided *Nasrallah*, Ahmed does not directly challenge the agency's factual determinations. However, Ahmed does argue that the Board and Immigration Judge committed legal error by giving inadequate weight to certain evidence. The Court will construe Ahmed's weight-of-the-evidence arguments as factual challenges and review them under the substantial-evidence standard. But we first address Ahmed's claims of legal error, which we review *de novo*.

- 4 -

## A.    Legal Challenges

Ahmed argues that the Board erred in adopting the Immigration Judge's findings and analysis. First, the Board does not commit legal error simply by adopting the factual findings or reasoning of the Immigration Judge. *See Garcia v. Holder*, 746 F.3d 869, 872 (8th Cir. 2014). Rather, in a case "where 'the [Board] essentially adopted the [Immigration Judge's] opinion while adding some of its own reasoning, we review both decisions.'" *Id.* (quoting *Osonowo v. Mukasey*, 521 F.3d 922, 926–27 (8th Cir. 2008)). Second, Ahmed has not identified any error of law made by the Board or the Immigration Judge. The record shows that both the Immigration Judge and the Board set forth the correct legal standard for consideration of an application for deferral of removal under the CAT. Both correctly stated that Ahmed bore the burden to show that it was more likely than not he would be subject to torture if removed to Bangladesh. *See* 8 C.F.R. § 1208.16(c)(2). The Immigration Judge noted his responsibility to consider all relevant evidence, and explicitly stated that he considered all evidence in the record in its entirety, regardless of whether it is specifically mentioned in the decision. The Board correctly stated the elements of "torture" as set out in 8 C.F.R. § 1208.18(a). In sum, we find no legal error in the Board's adoption of the Immigration Judge's findings or analysis.

Ahmed next argues that the Board erred as a matter of law by failing to recognize that torture under the CAT may include acts in which the government is not an active participant. We disagree. The Board correctly stated the definition of torture, noting that it may include acts taken "with the consent or acquiescence … of a public official," and citing the relevant regulation, 8 C.F.R. § 1208.18(a). *See Hanan v. Mukasey*, 519 F.3d 760, 764 (8th Cir. 2008) (rejecting claim that the Board "used the incorrect definition of acquiescence, especially when it cited to the provision containing the correct definition."). Accordingly, we find no legal error in the Board's application of the government acquiescence standard. Ahmed's contention that certain evidence shows the Bangladeshi government actually does acquiesce in torture is a factual challenge, which we address separately below.

Ahmed also argues that the Board and Immigration Judge erred by failing to consider all of the evidence in the record. "An allegation of wholesale failure to consider evidence" is a constitutional challenge that implicates due process. *Hanan*, 519 F.3d at 764. The record does not support Ahmed's claim that the Board or Immigration Judge failed to consider his submissions. As noted, the Immigration Judge explicitly stated that he considered all evidence in the record, whether or not mentioned in his decision. Further, "[t]he [Board] is entitled to a presumption of regularity," and "is not required by the Constitution to mention every piece of evidence that it considered." *Sharif v. Barr*, 965 F.3d 612, 624 (8th Cir. 2020). Finally, both the Board and Immigration Judge specifically mentioned the country reports containing the evidence Ahmed claims the judge ignored. Thus, we reject Ahmed's due process claim that the agency failed to consider all relevant evidence.

## B. Factual Challenges

Ahmed contends that the Board erred by concluding that he failed to meet his burden of proof. We construe this as a factual challenge to the Board's determination that Ahmed failed to show he was "more likely than not" to be tortured if removed to Bangladesh. 8 C.F.R. § 1208.16(c)(2).

The Board determined that Ahmed did not meet his burden to show that the Bangladeshi government acquiesces in torture. For an act to constitute "torture" under the CAT, it must be done "by or at the instigation of *or with the consent or acquiescence of* a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1) (emphasis added). Ahmed challenges the Board's determination in two respects. First, Ahmed argues that the Board did not give sufficient weight to evidence in the country reports that some community leaders used extrajudicial fatwas to punish individuals for perceived moral transgressions. Second, Ahmed argues that the Board did not give sufficient weight to evidence of

the government's involvement in displacement of religious minorities, including Christians, through land ownership disputes and forced evictions.

We find that substantial evidence supports the Board's determination that Ahmed failed to show that the Bangladeshi government acquiesces in torture. The record indicates that the Bangladeshi government continues to take action against religious extremists who commit violence. The country reports state that the extrajudicial action taken by some community leaders is contrary to the express orders of the Bangladeshi government. That the government has been less than completely successful at curbing the violence does not mean it has acquiesced to torture. "A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." *Garcia v. Holder*, 746 F.3d 869, 873 (8th Cir. 2014).

Likewise, substantial evidence supports the Board's determination that Ahmed's evidence of forcible land evictions does not demonstrate the government's acquiescence in torture. The Board found that the evidence of forcible land evictions did not demonstrate government-sponsored torture because the acts were not shown to have been inflicted for a proscribed purpose. We therefore review the Board's proscribed-purpose findings.

An act does not constitute torture unless it is for a "proscribed purpose." *Cherichel*, 591 F.3d at 1008. Specifically, "[t]orture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions." 8 C.F.R. § 1208.18(a)(3). "Lawful sanctions include judicially imposed sanctions and other enforcement actions authorized by law." *Id.* The record includes several reports by religious minorities, including Christians, of property and land ownership disputes and forced evictions, including by the government. But no evidence in the record shows that these evictions were for a proscribed purpose. It is certainly not self-evident that every forced eviction arising from a property dispute constitutes illicit government violence, much less torture. Further, the record indicates that some of

these property disputes stem from ineffective judicial and land registry systems rather than government policy disfavoring religious or ethnic minorities. In sum, substantial evidence supports the Board's determination that these forced evictions do not demonstrate government-sponsored torture. *See Bartolo-Diego v. Gonzales*, 490 F.3d 1024, 1029 (8th Cir. 2007) ("Even though the government's failure to investigate and punish [those] who break the law has resulted in human rights abuses, the failure is due more to a weak and inefficient judicial system than to government acquiescence or approval.").

Looking to the record as a whole, we find that "[a] reasonable adjudicator could have found the evidence insufficient to establish a likelihood of torture." *Ademo v. Lynch*, 795 F.3d 823, 831 (8th Cir. 2015). As noted above, the Bangladeshi government continues its efforts to combat violence against religious minorities by Islamic extremists. The Bangladeshi constitution officially provides for religious freedom for Christians, and the record shows that approximately 800,000 Christians live in Bangladesh, with the majority identifying as Roman Catholic. Further, the Immigration Judge and the Board properly found that Ahmed's testimony regarding his kidnapping and torture at the hands of Islamic extremists did not demonstrate government acquiescence in torture, because he admits that the crime was never reported to the police. *See Fuentes-Erazo v. Sessions*, 848 F.3d 847, 854 (8th Cir. 2017) (where violent acts were not reported to the authorities, a "reasonable adjudicator would not be compelled to find" that the acts occurred "with the imprimatur or acquiescence" of the government). Accordingly, we reject Ahmed's factual challenges to the Board's determination, and deny his first petition for review.

## C.    Motion to Reopen

We now turn to Ahmed's petition to review the Board's denial of his motion to reopen. We have jurisdiction to review denial of a motion to reopen. *Kucana v. Holder*, 558 U.S. 233, 253 (2010). The Board has "considerable discretion" to grant or deny a motion to reopen. *Lee v. Holder*, 765 F.3d 851, 855 (8th Cir. 2014).

Accordingly, we review the Board's decision to deny the motion to reopen for abuse of discretion. *Strato v. Ashcroft*, 388 F.3d 651, 654 (8th Cir. 2004). The Board "abuses its discretion only when its decision 'is without rational explanation, departs from established policies, invidiously discriminates against a particular race or group, or where the agency fails to consider all factors presented by the alien or distorts important aspects of the claim.'" *Lee*, 765 F.3d at 855 (quoting *Esenwah v. Ashcroft,* 378 F.3d 763, 765 (8th Cir. 2004)).

The Board may deny a motion to reopen on the basis of new evidence on any of three grounds: "failure to establish a prima facie case for the relief sought, failure to introduce [with the motion to reopen] previously unavailable, material evidence, and a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief sought." *Id.* Here, the Board found that Ahmed failed to show the newly-proffered evidence was not available at the time of his hearing, and further found that it was unlikely the new evidence would have altered the Immigration Judge's decision.

"A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2. Ahmed offers nothing, beyond conclusory statements, to support his claim that the newly-offered evidence was not available at the time of his hearing in 2018. Thus, we find nothing in the record to support Ahmed's claim that the Board abused its discretion in denying his motion to reopen. As noted above, failure to support a motion to reopen with evidence that was not available at the time of the agency hearing is sufficient reason for the Board to deny a motion to reopen. *Lee*, 765 F.3d at 855. Further, the Board determined that the new evidence—consisting of a statement from a Bangladeshi political party (or, a member of parliament, as Ahmed's counsel conceded at oral argument) regarding conditions for Christians who have converted from other religions—was unlikely to alter the Immigration Judge's decision. We find no abuse of discretion in this determination. The Immigration Judge found that the Bangladeshi government does not acquiesce in the

mistreatment of Christians. It was well within the Board's board discretion to conclude that the proffered evidence would not overturn that finding. We deny Ahmed's petition to review the Board's denial of his motion to reopen.

### III.  Conclusion

Accordingly, we deny both petitions for review.

_____