# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1945
_____

Mauro Alexis Montoya; B.L.M.

*Petitioner*s

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: September 27, 2024
Filed: November 22, 2024
[Unpublished]
_____

Before SMITH, ERICKSON, and STRAS, Circuit Judges.
_____

PER CURIAM.

Mauro Alexis Montoya and his son want to stay in the United States. Both the Immigration Judge and the Board of Immigration Appeals denied various forms of relief that would have allowed them to remain. We too deny relief.

I.

To gain asylum, Montoya had to establish that he is a "refugee," 8 U.S.C. § 1158(a)(1), (b)(1)(B)(i)—someone who "was or will be . . . persecut[ed]" in a foreign country because of his "membership in a particular social group," *id.* § 1158(b)(1)(B)(i). To satisfy these requirements, he claims to have been part of a group of "self-employed Hondurans" who were targeted by a local gang after refusing to pay a "war tax."

The problem is that he has not established that his membership in this social group, assuming it qualifies as one, was a "central reason" for the persecution he once experienced and now fears. *Gomez-Rivera v. Sessions*, 897 F.3d 995, 998 (8th Cir. 2018) (explaining that membership must be more than "merely incidental" or "tangential" to qualify). Montoya's burden was to show that the gang went after him "*because*" of his membership in it, not just that his wealth made him an "obvious target[] for extortionate demands." *Cambara-Cambara v. Lynch*, 837 F.3d 822, 826 (8th Cir. 2016).

He did not meet his burden.[1] According to the Immigration Judge and the Board, the gang "extorted" and then "attacked" Montoya because he had a "salary" and "refused to pay them," not because he was a member of a group of persecuted self-employed Hondurans. He has not convinced us that a "reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), especially given his own admission that he was "asked to pay a war tax" based on his "monthly salary." In other words, substantial evidence supports the finding that his wealth, not his membership in any particular social group, was the "central reason" for his persecution. *Gomez-Rivera*, 897 F.3d at 998.

---

[1]Montoya's withholding-of-removal claim, which requires an even greater showing, is not before us because he failed to raise it to the Board. *See Marambo v. Barr*, 932 F.3d 650, 654 (8th Cir. 2019) (requiring an applicant to "exhaust[] his administrative remedies"); *see also Ngengwe v. Mukasey*, 543 F.3d 1029, 1033 (8th Cir. 2008) (describing the "higher standard" for withholding-of-removal claims).

## II.

Montoya fares no better under the Convention Against Torture. The focus now is on whether, if he were removed to Honduras, "it is more likely than not that he . . . would be tortured," 8 C.F.R. § 1208.16(c)(2), "with the consent or acquiescence of a public official or other person acting in an official capacity," *Garcia v. Holder*, 746 F.3d 869, 873 (8th Cir. 2014) (quoting 8 C.F.R. § 1208.18(a)(1)). "Demonstrating 'acquiescence' . . . requires proof 'that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene . . . .'" *Id.* (quoting 8 C.F.R. § 1208.18(a)(7)). In particular, an official must have been "willful[ly] blind[]" toward [Montoya's] torture," not just to the mistreatment of other citizens. *Id.* (citation omitted); *see Hassan v. Rosen*, 985 F.3d 587, 590 (8th Cir. 2021).

Montoya established only the latter. The Immigration Judge credited a State Department report finding that "some [Honduran] police [have] committed crimes along with the gangs" and that "gross, flagrant, and other mass human rights violation[s] persist in Honduras." Montoya also showed through a police report that the gang once cut his right foot with a saw. Missing, however, is evidence that any Honduran officials acquiesced then or would do so in the future if he were to return. *See Hassan*, 985 F.3d at 590. Substantial evidence, in other words, supports the no-acquiescence finding. *See id.*

## III.

We accordingly deny the petition for review.

_____